Case number 23-3046, United States of America v. Tristan Chandler Stevens, at balance. Ms. Salant, for the at balance. Mr. Hill, for the appellate. Ms. Salant, good morning. Hi, good morning. May it please the court. My name is Megan Salant and I am here on behalf of Tristan Stevens. Mr. Stevens was sentenced under the incorrect guideline. The lower court relied on the commentary definition of the unambiguous term, excuse me, the commentary definition of the unambiguous term aggravated assault and switching from the correct guideline 2A2.4 to 2A2.2. The term aggravated assault as used in the text of the guideline in 2A2.2 and 2A2.4 is unambiguous. Under Kaiser and Stinson, this court should not give deference to the commentary's broader definition. Instead, this court should rely on the plain language and text of the guideline and the definition adopted by 24 states and the District of Columbia, which do not include the term with the intent to commit another felony. This language is missing from the text of the guideline and it is also missing from the secondary sources cited by the government on page 38 of their answer brief. The plain meaning of aggravated assault does not include intent to commit another felony and therefore Mr. Stevens should have been sentenced under 2A2.4. Alternatively, 2A2.2 was improperly applied to Mr. Stevens' case because there was no separate intent between his 111 offenses and his 231 offense. Another felony is defined elsewhere in the guidelines to distinguish between the offense being committed and an additional separate offense. The cross-reference does not say the same intent should be committed. I'm sorry, that two offenses with the same intent can be considered. On your first argument, if we were in a pre-Kaiser world, you would agree that the commentary definition would be controlling here? Well, I think that certainly Stinson requires deference to the commentary, whether the term is ambiguous or unambiguous. But I do think that the way that the commentary is applied here, I think that it is in contrast with the plain meaning of the guideline. I think that 2A2.4... Your position is that even in a Stinson world, you would say the commentary's inclusion of intent to commit another felony as a basis for triggering the aggravated assault would be foreclosed by the plain language? I think that, yes, I think that argument can be made. Obviously, I think that Kaiser modified Stinson in a way that makes Kaiser applicable here. But I do think that the text of 2A2.2 gives lots of different factors that increase one's base offense level. And I think that the broad addition under the commentary of the intent to commit any felony seems contrary to that list of factors. And then Kaiser applies to agency interpretations of regulation, correct? Correct. Okay. But if commentary goes through notice and comment rulemaking, then we wouldn't be in Kaiser world anyhow, correct? Well, not necessarily. I mean, with Stinson, before when Stinson first was issued, one of the reasons that they applied, they discussed in Stinson initially that the commentary didn't go through notice and comment. But then after Stinson, that's never changed. They've never gone back to change the fact, their consideration of the guidelines just because now the commentary is considered by Congress. But it also goes through notice and comment rulemaking. Correct. I know. I'm sorry. Is there any other area of administrative law where Kaiser is applied to notice and comment rulemaking as opposed to interpretations of regulations? Not that I'm aware of, Your Honor. So your argument is that we should apply Kaiser to decide whether to defer to a notice and comment rulemaking? Well, the first thing that we do with Kaiser is look at just the term aggravated assault, and decide in the normal textual circumstances if that's ambiguous. So, and my argument is that aggravated assault is not ambiguous. And even if it were ambiguous, then we still get to move on to whether or not it's the definition that is created by the- You don't really have a Kaiser argument here. You're just arguing that the plain language of aggravated assault forecloses interpreting that to include conduct undertaken with the intent to commit another felony. But aside your separate argument about why you don't have that intent here, but- I'm sorry. So can you repeat that? So your argument is that this isn't even a Kaiser case. Your argument is that the commentary is inconsistent with the plain language of the guideline itself, full stop. And we can tell from the guideline itself what aggravated assault includes. And so even if we were in- Even if it's a notice and comment rulemaking rule that we're analyzing, you would say, doesn't matter, plain language of here the guideline ordinarily a statute controls. Is that your position? I believe so. I mean, I certainly, you know, I think that Kaiser applies in the sense that we have to go to the first step, which is, is the term that we are interpreting ambiguous or not? Well, you can do that under any regulation, whether notice and comment or interpretive. Right. Correct. And so you're just stopping there. Correct. So because this guideline or this commentary did go through notice and comment rulemaking, as well as presentation to Congress. It did, I believe. I mean, it has. Yes. Yes. And so it's not just an interpretive regulation. It's the equivalent of a full blown notice and comment regulation. Which Kaiser never applies. I guess that goes, I do think that Kaiser, I think that Stinson applies to the commentary when Stinson, the Supreme Court has not told us that Stinson no longer applies to the commentary because it's now subject to notice and comment. And I believe that Kaiser applies to Stinson. So yes, although the commentary, although. Did Kaiser say it was changing anything in Stinson? Well, I think that it included it in its footnote regarding whether or not. Here's something we've done. It's not overruling a prior, that's not how they overruled a prior precedent. Well, I don't think that they've overruled it. I just think that it, I mean, the language in Kaiser said that they were restating the Seminole Rock deference and also reemphasizing its limits. And certainly. They were talking there about interpretation of a regulation, not a notice and comment regulation, an agency interpretation. Correct. But yes, that's true. This is just a different world. I'm sorry? This is just a totally different world. Well, it may be, but I encourage this court to side with the other, not side, that's a horrible word. I encourage the court to use the reasoning that's used by many of the other circuit court of appeals that do find that Kaiser modified Stinson. I'm a little bit puzzled by why you're struggling against Judge Millett's characterization. I mean, your argument is a textual argument that aggravated assault is clearly and unambiguously excluding an assault with an intent to commit another felony. I don't know that I think it's excluding it. I think that it, but it doesn't. It's not defined to include every single felony, right? A, an assault that is committed with intent to commit another felony. And on your, on your second argument that the two are really not separate felonies at all. Even if we accept your rule that the same conduct and intent can't be used to establish both the and the other felony, even under that rule, doesn't the government point to separate intent to engage in civil disorder, for example, in the, in the second felony, the 231. That's no, there's no, you don't need to show any intent to engage in civil disorder to commit an assault against a line of officers. No, but the, but the 111 offense is a general the intent to resist or to, you know, to act, to do the act. Right. So, so one of them, one of the assaults is the, the actions. Well, there are three, you know, the Stevens's aggression against the officers. And then the 231 is a, all of those repeated actions in concert with, with the mob of people trying to overcome the officer's ability to guard the Capitol. That seems like that's even on your view, which would say, look at the facts that there's a different set of facts that are supporting the 231. No, I, yes, I guess the mob element is there and that's not present in the, in the 111. And they're trying to overcome their ability to guard the Capitol. I mean, you could think of other assaults on an officer, retaliatory assault on an officer, or just an anti-police assault. This one is, has a kind of operative context that is quite distinct from the ordinary assault of an officer. Sure. But I still think that the, the intent in, in committing the 111 offenses was the same. I mean, Mr. Stevens didn't show up to the Capitol by himself to, you know, to resist or obstruct the officers. He showed up with a group to do that. And so he wouldn't, there's no intent that makes it just a 111 offense. That makes sense. Except that if somebody were, you know, trying to cross across the Capitol during this period, not realizing what was going on and, you know, and was startled by an officer and assaulted them. That would be a very different, isolated. Sure, absolutely. But that's not the circumstances that we have here. And can you do a little bit more about, to explain, you rely on Judge Amy Berman Jackson's reasoning in the Hamner case. She declined to treat a January 6th defendant's conviction for violating 231 as an aggravated assault to which 282.2 applies. But she, as I read that bench ruling, she is explicitly distinguishing a case like this one, where the base offense level is set by the 111A conviction and then the 231A3 serves as the other felony. Can you explain how you nonetheless take support from her reasoning in Hamner? Well, I believe, I mean, her reasoning was that the, that the commentary doesn't say separate intent or a separate offense. I'm sorry, that the commentary requires an additional felony and that's not, again, Mr. Stevens's actions were all one, they were all one action. But she specifically, and I'm looking at pages 14 to 15 of the, of the transcript, she says, we're not using the 231 offense as another felony for the 111 offense. In that case, in Hamner, we're going the other way. And that was what she found to be problematic. So she found a case like this one, she was saying that, that wouldn't be problematic. What I'm finding problematic, she says, is the 231 is the base offense and the 111 is the other felony. Right, right. I guess I'm not sure that, I'm not sure that there's a distinction. Mr., I mean, there were facts in Mr. Stevens's case that, that took his 111A offense to make it the, not the highest, but sort of the middle ground, the, the exaggerated, you know, he made contact, that kind of thing. So I, I don't know that, that that's makes the Hamner case different. I understand what she's saying about the 231. I understand the question about 231, her statement about 231, not being able to use the 111, but I feel like we're doing the same thing here. It's just that it's grouping. So whether it's one or the other, because the, in the PSR, the government chose to, to apply 282.4 to 231 as well. So it was all, you know, it was all in one group. So I don't, I don't know that it's distinguishable from there. All right. We have a, just real quickly, why isn't it that your whole argument sort of harmless error here, because the district court said, I'm not even applying the guideline commentary. Correct. I'm under 3553. This is a sentence, full stop. Even if you win on your guidelines argument, this is the sentence. Right. So as far, so as far as harmless error goes, the judge in, in making that statement, the judge said he wasn't relying on the commentary. I'm sorry that he wasn't relying on the commentary definition, but then he cited to Blacks, the definition in Blacks law. And I think that that, I actually think that the Blacks law definition supports our argument. It talks about pardon me. I can't remember the exact language, but the language, the definition in Blacks makes it seem as though like many other States have done an aggravated assault can be an and then murder rape. I can't think of another example of what those examples. And so he, although he said he wasn't relying on the commentary, what he is relying on is something that we believe actually supports our petition, our position. Because it's, it references another felony, but not in a way of any felony. Another felony that would be specific. I guess I'm still trying to get to the harmless. So you think that, oh, I'm sorry. He doesn't know. He didn't really mean what he said. Well, I think, I, I, I think that he didn't, the way he justified it is, is contradictory. It backs into commentary by referencing Blacks law. Right. Correct. All right. All right. Thank you very much. Oh, I have one more. I'm sorry. I have one more question about the government's use of a kind of block burger analysis to say whether something's a, another felony and whether you had any response to that framework. Well, I don't think that I don't really, I don't believe that it's a, obviously it's not a block burger test because block burger doesn't apply to the guidelines. But by analogy, that kind of reason. Yeah, I don't, I'm sorry. I will give you a couple of minutes to reply. Okay. Thank you, Mr. Hill. Thank you. May it please the court, Dietrich Hill on behalf of the United States. Tristan Stevens violently assaulted officers as part of the mob during the attack on the United States Capitol. When he did so, he also had the intent to commit civil disorder. That was aggravated assault and the district court correctly applied the aggravated assault guideline. At the threshold, the commentary definition does govern. The meaning of aggravated assault is at least ambiguous here. And you can see that just by looking to Blacks law dictionary. In addition to the fact that of all the other sources, almost every source has a different definition of aggravated assault, including all of the state laws cited by Stevens here. And then the commentary definition is at least reasonable again, looking to Blacks law dictionary, as well as the fact that the very structure of the guidelines, including its treatment of section 113A2, general federal assault with intent to commit another felony, which goes to the aggravated assault guideline. That shows that the guidelines themselves arguably require this definition. Under that definition, Stevens' assaults were aggravated assaults. They involved an intent to commit another felony, 231. The plain meaning of another felony here is a felony with different elements. And there's no dispute, Stevens does not dispute that these felonies had entirely different elements. You said in your brief that sentencing looks to conduct, not elements. That's what sentencing is about, as opposed to conviction. And so it seems you're flipping that around now when you say for purposes of applying the analysis as to what counts as another felony, we should look at elements rather than conduct. We suggest that you should look at elements just for purposes of determining the meaning of another felony, and then real conduct to determine whether another felony occurred. I mean, I understand what that means, because that would give you, it could give you, one can imagine a situation, and they say this is one, where maybe a Black worker would give you one answer on elements. But this was the same conduct, just being counted twice. Well, I can't, so you can't sort of say let's do elements and then let's do conduct. I mean, it's, they can, contradictory answers. I guess there could be a situation in which they give you contradictory answers. This is not that situation. Okay, but what would happen if they, if you had contradictory answers? We think that the elements test at least explains the meaning of another evidence. Is there that that's what the guidelines, the Sentencing Commission meant when it said another felony, as opposed to the natural common sense meaning other felony conduct? Well, it's not clear, and so first we look to plain. No, I know, but I'm asking why you're importing elements in as a framework for analysis here when it doesn't, by your own brief, elements analysis doesn't apply at the sentencing stage to the guidelines. Are there other guidelines where they do a element-by-element analysis, like a Blackbarger analysis that you can refer us to? Well, I would point out, and it's a little bit different, but the other thing in the guidelines that supports this analysis is the firearm possession guideline that we cite in our brief where the commission specifically changed the commentary to make clear that even very closely related possession offenses, such as state law burglary that primarily involves possession of the firearm, should be treated as another felony offense because they have a different element. I guess you could you could say different conduct too, but that would be the primary support. Okay, but then there's no language like that by the commission here. No. So doesn't that suggest the commission had a different meaning here? I would argue that there was no circuit split over the meaning of this another felony. There was a circuit split over the meaning of another felony offense, which led the commission to clarify that, and the commission's clarification should also point to what it... Are there other circuits that agree with your Blackbarger reading of another felony test? I haven't seen any circuit case directly on point here. Right, so the commission may well have had its natural meaning, like it does everywhere else in the guidelines, unless it says otherwise, of looking at conduct on elements. I mean, fair enough, but we also certainly win because there's different conduct here, and the key distinction would be between the intents required for these two different offenses. The assault offense requires a very general intent, at most an intent to injure, but that includes just an offense of touching. But even in that description, you're going back to the legal requirements. Can you give us your answer in more factual terms? Because I think that's what... Sure. That's how I understood this questioning to be proceeding. And I understand Stevens's counsel to be saying the on-the-ground conduct is the same, and the inferences that the court drew in terms of meeting one legal set of elements versus another may differ, but if we're looking for sentencing purposes at the conduct, tell us how they're different. Well, the conduct is the same, but the intent is very different. The intent is a specific intent. Isn't intent also proved, at least in a case like this, circumstantially by conduct? So if you could, again, tell us. Dr. Rawls-Geltsy? Oh, sorry. Yes, I am coming to my appointment. Yeah, tell us what the district judge would have looked to as an evidentiary matter that would be different on the 231. I mean, I agree that the conduct is the same, Your Honor. The district court was thinking about the fact that there are two intents, and particularly that the same conduct is really directed at two different harms here. There's the 111, which is about an officer's physical safety. That's what the Supreme Court made clear in the United States. We feel that you don't have to know that there's an officer. You don't have to have any intent to impede. Section 231A3 is at heart an obstruction statute. It's about protecting officers' ability to do their duty during a civil disorder, such as the riot here, to be able to defend the Capitol. And so Stevens was doing two things, albeit with the same conduct. He was both physically attacking the officer, and he had the larger purpose of trying to prevent that officer or those officers from doing their duty during a riot. That's aggravated assault, both in the most technical definition and in the larger definition, because it's assault accompanied by something that makes it more severe than your ordinary assault, for example, during resisting arrest. And the circumstances here, of course, were especially uniquely dangerous. This was a massive riot, and the fact that so many people were doing what Stevens was doing, committing a 111, accompanied by the 231, the specific intent to prevent those officers from performing their obligations, is what made this so dangerous beyond an ordinary 111. And that's what district courts have agreed in hundreds of these cases. Why do you agree that the conduct is the same under 111 and 231? 231 requires that you act during a civil disorder. 111 doesn't. So why do you, I thought you just said to Judge Pillard, you agree the conduct is the same? Well, in the narrowest sense that the particular assault on the officer was also the act with the purpose. For example, 231 requires a nexus to commerce, and it requires a civil disorder. Right. You could have a 111. I mean, it's maybe one way of thinking about it is there's an overlap between some of the actions, but the lens of relevance of what conduct you're looking at, the narrative is very different for the two. Yes, the narrative is very different. And that's the fact that there is a civil disorder going on. It doesn't matter for the 111. It doesn't matter for the 111. That's right. The fact of a nexus to commerce doesn't matter for the 111. That's right. And that is why committing the harm simultaneously is so different than just the 111, because the civil disorder, because you're preventing the officer from performing his or her duties during a civil disorder. So what is it that you are conceding when you say the conduct is the same? I find that a little bit confusing. Just that the same physical part of the attack, in other words, with Sergeant Ganell, the pressing of the riot shields to try to crush his face, that was the same, both the act to obstruct him, Sergeant Ganell, and the act that is assaulting, resisting, opposing, defeating, et cetera. But there's also for 231, the conduct of being in a crowd, being in the tunnel, trying to get to the doorway of the Capitol, being aware that the police are setting up a line to try to protect the Capitol. That's a lot of fact that isn't the same. That's right. And in a broader sense, that is different conduct. And I think that also goes to a different intent as well. When you know that you are in the middle of a civil disorder and you're committing this assault, that's worse than when you're committing an assault on the sidewalk, some kind of Can I ask about your harmless error argument? And that is, I understand the aspects of the district court decision on which you rely, but as Counselor Mr. Stevens just said, the district court did go back into the commentary by referencing blacks and its inclusion of assaults with intent to commit another felony. And it's a pretty presumption that if there was an error in applying the guideline, that is the starting point for the sentencing discussion. That if an error is found there on a panel, this is just obviously a hypothetical question, but if an error is found there, then isn't the best thing to do to send it back so the district court can think again in light of the right guideline? Two points, Your commentary, the district court looked to the broadest definition where it's circumstances that make it more severe and look to all of these points, the ongoing civil disorder, and not just the fact that blacks includes intent to commit another felony, but more broadly to harmless error. The district court made very clear that it was relying on 3553A factors, such as respect to the law, lack of remorse, need for just punishment, as well as factors that are more specific, but that the guidelines did not account for, including the number of officers affected and the uniquely dangerous situation at the Capitol on January 6th. No, I understand. It's not the question here isn't whether the same sentence could result. The question really is, given that we live in a world in which the guideline is the starting point of discussion, and if the starting line changes materially, like 50% here, isn't the better course to let the district court, with that information in hand, revisit the sentencing decision. It's a much, much bigger variance. It's a dramatically larger variance, at which point the court might want to think about, well, in what circumstances do courts make variances of this magnitude? And the stuff that district courts didn't have to think about given the starting point of the guideline that was chosen. I do think the test, as I understand it, is whether remand would likely be futile. And the district court was so clear here, indeed explicitly said that even if Stevens's counsel were right on every aspect of the guidelines, he would vary to reach the same ultimate conclusion on the sentence. I can't think of a case in which remand would appear more futile. I guess I hear you, and I appreciate that, but I guess the two sort of uncertainties that that leaves me with. One is that the cases that the government cites, the Kaufman and Thompson case, are cases in which the change, the differential, still would fall within the guidelines range. Here we have something that is actually in both cases would be outside, or in the case of Judge McFadden's actual sentences is a variance. But also it assumes that a district judge, that confronting the actual applicable guideline doesn't affect the district judge's reasoning. And I guess the shorthand way of putting it is, if we were to hold this error harmless, then wouldn't we have to so hold every time a district judge says, and I would come to the same conclusion no matter what, all the district judges would have to do to insulate their sentencing, their guidelines errors from review is just say, I'm wrong about that. I would reach the same result. And we have a lot of, I mean, it would undercut Melina Martinez, it would undercut Gall and Rita and a lot of cases. On the first point, Your Honor, that's right. They were both within guidelines changes. I haven't seen any case like this. So there's nothing to contradict the more general principle that if remand is futile, then affirmance is appropriate. With respect to what the district judges might say, I think this court can look to the specificity and clarity of the alternate reasons for giving the same sentence. If a district court said nothing, but I would give the same sentence, that might get a different level of review than a situation here where the district court goes through many specific reasons as to which he is varying and would vary in the guidelines that Stevens' counsel was proposing. The district court was clearly disturbed by what he called a frenzied efforts, the contempt and aggression shown by Stevens. I think just looking at the video here, it's disturbing every time to see Stevens' actions. And the district court clearly was disturbed by Stevens' lack of remorse as well. Essentially, no apology and a list of I don't think the district court could have been more clear than that he would give the same sentence on remand. In terms of Judge Berman Jackson's analysis in Hamner, I guess it's a little bit unclear from her bench ruling, which one you choose as the initial felony and which you choose as the another felony should make a difference. I mean, if in this case, the government has said that 231 is the initial and then the 111 was the another, do you run into the same circularity? Or I guess it doesn't work that way. I think in that case, the district judge was especially thrown off by the fact that it was a single 231 plea. There was no plea to a 111. And she felt that there was an excessive amount of circularity and going back to the 111 and then the 231. If we were to agree with her, can you help me understand why that wouldn't require us to hold the same here? I do think it's different when you have the 111 as the offensive conviction first, because there's no requirement to go from the 231 back to the 111 to find the assault and then from the 111 back to the 231 looking at intent to commit another felony. That seems like a different situation. So having the 111 first makes it clear that there is a felonious assault involving, and then you look through the list of the commentary definition and see, yes, there was an intent to commit the 231 added on to the 111. You're not looking at the 231 and using that for every step of the process. Just one other question, because you before, I mean, the variance here using the government's, the court's chosen sentencing guidelines starting point was up nine months from the top. And here would be more than double the top. Have you seen variances that much before? Um, not in my, in my personal experience, I can't think of one. I have already cases where I off the top of my head, I can't think of the name, but I have seen circuit cases from other circuits affirming variances that were as much as twice or more the guideline sentence. That would be an unusual cases, but I think this is an unusual case for the reasons identified by the district court. Thanks. All right. Thank you. Council. Thank you. This is a lot. Why don't you take two minutes? Thank you. I just like to address, um, the point that judge Millett was just making about, um, the variance. Uh, if, if the, if the court had, uh, had applied, what we are arguing is the correct guideline to a 2.4. Um, then the, the variant, the ex essentially what's happening here is that we're claiming if, if we are going to claim that there was harm, if, if the court were to find that there was harmless error, that would be finding that the explanation for a nine month variance is the same as an explanation for a 36 month variance. And Mr. Stevens, we would, we would argue that that's, that just cannot be found harmless. That's a, that's a huge difference. Um, and so we would ask that this court remand for resentencing under 2a 2.4. Thank you.
judges: Henderson, Millett, Pillard